# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| WANDA FAYE JONES,<br>KELLY DORRIS PENDERGRASS, and<br>TIFFANY SHEA JONES,<br><br>    Plaintiffs,<br><br>vs.<br><br>ELITE EMERGENCY SERVICES, LLC, and<br>SAMUEL C. CLEMMONS, and<br>SHANNON CLEMMONS, Individually and<br>d/b/a Elite Emergency Services, LLC,<br><br>    Defendants. | ) )<br>) )<br>) )<br>)<br>)<br>)   **Case No. 3:12-cv-0203**<br>)<br>)   **Judge Nixon**<br>)<br>)   **JURY DEMAND**<br>)<br>)<br>)<br>) |

## PLAINTIFF WANDA JONES' RESPONSE TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Comes now Plaintiff, Wanda Jones, pursuant to Federal Rule of Civil Procedure 56 and responds to Defendants' Motion for Summary Judgment. In support of her Response, Plaintiff Wanda Jones has filed simultaneously herewith her Second Notice of Filing of Exhibits including, but not limited to, the Declaration of Jessica James and Plaintiff Wanda Jones' Response to Defendants' Statement of Material Facts. Plaintiff Wanda Jones also relies on the entire record in this cause.

## I.
## INTRODUCTION AND PERTINENT FACTS

Defendant, Elite Emergency Services, LLC ("Elite" and/or "the company"), is a Tennessee for-profit limited liability company located in Franklin, Tennessee. (Pls.' Statement of Material Facts, ¶ 1, Doc. 100-1)

Elite is in the business of arranging for the placement of Emergency Room doctors with various hospital Emergency Rooms and billing for their services to insurance companies, individual patients,

Medicare, etc. During the relevant period,[1] the billing process was clerical in nature and involved gathering information and entering it into the company's software program called Advanced MD. (Pls.' Stmt. of Material Facts, ¶¶ 17, 30, Doc. 100-1) Plaintiffs then compared the bills with the company's receipts to see if there was an outstanding balance. (Pls.' Statement of Material Facts, ¶ 18, Doc. 100-1) This was called "posting". It was also a job that required no specialized skill, training, or discretion. (Pls.' Statement of Material Facts, ¶¶ 17, 19, 20, 21, Doc. 100-1; Decl. of W. Jones, ¶ 14, Doc. 85-1) The Plaintiffs also performed services which did not require the use of Advanced MD including retrieval of information, confirmation of demographic information, coding, traveling to post office and bank on occasion and discussions with insurance companies and/or hospital representatives. (Pls.' Statement of Material Facts, ¶ 35, Doc. 100-1)

There was no judgment or discretion required in the billing and/or the posting process. (Pls.' Statement of Material Facts, ¶¶ 17, 20, 21, Doc. 100-1; Decl. of Wanda Jones, ¶ 14, Doc. 85-1) All information was already determined by either the ER physician, the software program, coding publications and/or Elite. (Pls.' Statement of Material Facts, ¶ 21, Doc. 100-1; Declaration of Wanda Jones, ¶ 14, Doc. 85-1) Once the required information was entered into a software program, the software program determined the charges. (Pls.' Statement of Material Facts, ¶ 17, Doc. 100-1) Payments received were compared with the bills sent out. (Pls.' Statement of Material Facts, ¶ 18, Doc. 100-1) If a balance remained, it would be turned over to collections, which the Plaintiffs did not perform. (Decl. of W. Jones, ¶ 14, Doc. 85-1; Pls.' Statement of Material Facts, ¶ 18, Doc. 100-1)

In July of 2007, Defendant Samuel Clemmons entered into an agreement entitled Independent Contractor Agreement with Wanda Jones for her to provide billing services. (Pls.' Material Statement of Facts, ¶ 5, Doc. 100-1) The agreement between the parties set forth that Plaintiff Wanda Jones was to work forty (40) hours a week and was to be paid every two (2) weeks the sum of $600.00 which was calculated on an hourly rate of $15.00. (Pls.' Material Statement of Facts, ¶5, Doc. 100-1) The hourly

---

[1] Plaintiffs are claiming FLSA damages for the three (3) years prior to the filing of their lawsuit, 2009, 2010, 2011 (hereinafter referred to as the "relevant period").

2

rate was increased a couple of times thereafter. (Pls.' Material Statement of Facts, ¶ 5, Doc. 100-1; Wanda Jones Independent Contractor Agreement, Doc. 96) Plaintiff Wanda Jones worked exclusively for Elite from the time she entered into the so-called Independent Contractor Agreement in July of 2007 until she was fired on January 4, 2012, totaling approximately four (4) years five (5) months. (Pls.' Statement of Material Facts, ¶ 11, Doc. 100-1) For the relevant period, Plaintiff Wanda Jones worked a total of 2,238 overtime hours for which Elite did not compensate her. (Pls.' Statement of Material Facts, ¶ 13, Doc. 100-1) For the years 2009, 2010, and 2011, Plaintiff Wanda Jones worked a total of 8,538 hours including overtime hours. (Pls.' Statement of Material Facts, ¶ 14, Doc. 100-1)

In addition to the contracted hourly amount which was paid bi-weekly, based on forty (40) hours at an hourly rate, sometimes Plaintiffs received a monthly bonus. (Pls.' Statement of Material Facts, ¶ 22, Doc. 100-1) However, they were not aware how the bonus was calculated or what it was based upon. (Pls.' Statement of Material of Facts, ¶ 31, Doc. 100-1) Accordingly, they did not know whether they could make more money or not by either increasing the quantity of their work or by improving the quality of their work by increasing their efficiency. (Pls.' Statement of Material Facts, ¶ 22, Doc. 100-1) It was simply an arbitrary amount which was decided by Elite.

Wanda Jones worked for Elite for approximately four and one-half years, (Pls.' Statement of Material Facts, ¶¶ 6, 8, 11, 32, Doc. 100-1) Beginning in 2011, Elite converted the Plaintiffs' status from independent contractor to employee; however, nothing changed with respect to their performing their jobs except that they received a W-2 form. (Pls.' Statement of Material Facts, ¶ 37, Doc. 100-1) The company was aware of the Plaintiffs' concern regarding working so much time, but responded that "you just need to work as long as it takes you to do the job". (Decl. of T. Jones, ¶ 5, Doc. 86-1) During their entire employment with Elite, whether considered an independent contractor or employee, Plaintiffs were never paid overtime for their overtime worked over forty (40) hours a week. (Pls.' Statement of Material Facts, ¶ 36, Doc. 100-1) Plaintiffs were fired by Chief Executive Officer Samuel Clemmons effective January 4, 2012. (Pls.' Statement of Material Facts, ¶ 41, Doc. 100-1) It is clear

3

from the facts set forth herein that Plaintiffs had been misclassified as independent contractors and that Defendants failed to pay Plaintiffs all wages due, including overtime, for the years 2009, 2010, and 2011.

Defendants' violation of the FLSA is willful and, thus, the three (3) year limitations period should be effective to recapture damages incidental to the misclassification of Plaintiffs and the refusal to pay Plaintiffs back wages and/or to withhold pursuant to FICA. Defendants Samuel and Shannon Clemmons are individually liable for the violations set forth herein. Also due Plaintiffs are their attorney's fees and costs and liquidated damages.

## II.
## LAW AND ARGUMENT

Defendants filed nine Motions for Summary Judgment (Docs. 38-46).[2] Defendants also filed nine memoranda of law in support of their motions (Docs. 47-55).[3] The memoranda of law against Plaintiff T. Jones and Plaintiff Pendergrass identify four issues (Defs.' Mem. of Law 2, Docs. 50-55),[4] while the memoranda of law against Plaintiff Wanda Jones identify the same four issues as they relate to her, plus two additional issues (Defs.' Mem. of Law 2, Docs. 47-49).[5] The legal analyses related to the common four issues are almost identical in the two memoranda, and Plaintiffs Tiffany Jones and Pendergrass address them in their Response Brief which is incorporated herein by reference. Because their arguments relating to the four common issues apply with equal force to her, Plaintiff Wanda Jones

---

[2] Three were filed against Plaintiff Wanda Jones (Docs. 38-40), three were filed against Plaintiff T. Jones (Docs. 41-43), and three were filed against Plaintiff Pendergrass (Docs. 44-46). While the motions do not say so explicitly, Plaintiffs believe that Defendants filed three separate motions against each Plaintiff because there are three Defendants. Thus, Defendant Elite filed three motions, one against each Plaintiff; Defendant Samuel Clemmons filed three motions, one against each Plaintiff; and Defendant Shannon Clemmons filed three motions.

[3] Defendants' three memoranda of law against Plaintiff Wanda Jones (Docs. 47-49) are identical to each other, and Defendants' six memoranda of law against Plaintiff T. Jones and Plaintiff Pendergrass (Docs. 50-55) are identical to each other. Accordingly, Defendants really filed two memoranda of law – one against Plaintiff Wanda Jones, and one against Plaintiff T. Jones and Plaintiff Pendergrass.

[4] These issues are (1) whether the Plaintiffs were independent contractors or employees; (2) whether the Plaintiffs worked overtime; (3) whether Defendants willfully violated the FLSA; and (4) whether Defendants Samuel Clemmons and Shannon Clemmons were employers under the FLSA. (Defs.' Mem. of Law 2, Docs. 50-55.)

[5] These issues are (1) whether she was exempt from the requirements of the FLSA; and (2) whether she destroyed and failed to produce evidence related to this matter. (Defs.' Mem. of Law 2, Docs. 47-49.)

relies on the arguments set forth in the other Plaintiffs' Response Brief. Plaintiff Wanda Jones also addresses specific points in the common four issues that relate specifically to her and the two issues that are unique to her.

<u>Summary Judgment Standard</u>

Courts may grant summary judgment if no genuine dispute of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Facts are material if they are defined by substantive law and are necessary in order to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Genuine disputes of fact exist when the evidence would permit a reasonable jury to return a verdict for the non-moving Party. *Id.*

Courts ruling on summary judgment motions must evaluate the evidence, facts, and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). That said, parties responding to summary judgment motions may not "rest upon the mere allegations or denials of [their] pleading[s], but . . . must set forth specific facts showing that there is a genuine issue for trial". Fed. R. Civ. P. 56(e).

 Further, "in the Sixth Circuit, an employer claiming to be exempt from FLSA requirements bears the burden of proving a specific exemption applies." *Pierce v. Coleman Trucking, Inc., et al.*, 2005 U.S. Dist. LEXUS 20942 at *15 (N.D. Ohio Sept. 23, 2005) (citing *Homemakers Home & Health Care Servs., Inc. v. Carden*, 538 F.2d 98, 101 (6th Cir. 1976)).

In the instant case, Defendants' Summary Judgment Motion should not be granted because genuine disputes of material facts exist.

<u>Independent Contractor or Employee</u>

While she relies on the arguments set forth in the other Plaintiffs' Response Brief which is incorporated herein by reference, Plaintiff Wanda Jones does want to address one point that Defendants make specifically about her – that she had the power to hire help if she needed it. (Defs.' Mem. of Law 8). Defendants make this argument when discussing Plaintiff Wanda Jones' opportunity for profit or

loss depending on her skill. However, there are several problems with this contention. First, it is unsourced, and there is no support in the record for it. Second, Plaintiff Wanda Jones had no authority on her own to hire anyone to work for Defendants. (Decl. of Wanda Jones, ¶ 28, Doc. 85-1; Depo. of Wanda Jones, pp. 53-54, lines 8-22, Doc. 77). Finally, even if the statement is true, it has no bearing on Plaintiff Wanda Jones' opportunity for profit or loss based on her skill.

<u>Plaintiff Wanda Jones Worked Overtime</u>

While she relies on the arguments set forth in the other Plaintiffs' Response Brief which is incorporated herein by reference, Plaintiff Wanda Jones does want to address two points that Defendants make specifically about her. First, Defendants state that Plaintiff Wanda Jones "allegedly maintained and recorded her hours she worked [sic] in 2009, 2010 and 2011 by handwriting them on a calendar" and that Plaintiff Wanda Jones never produced this calendar during discovery. (Defs.' Mem. of Law 12.) It is true that such a calendar was not produced, but that is because it did not exist. Instead, Plaintiff Wanda Jones misspoke during her deposition and actually was referring to a calendar she created after her termination for the purpose of litigation. (Decl. of Wanda Jones, ¶ 21, Doc. 85-1.) Moreover, while Defendants assert that Plaintiff Wanda Jones did not work overtime, Plaintiff Wanda Jones has calculated that she worked 2,238 hours of overtime. (*Id.* at ¶ 24.) Thus, at the very least, there is a genuine dispute of material fact that Plaintiff Wanda Jones worked overtime during the relevant time period.

<u>Plaintiff Wanda Jones Was Not An Exempt Employee Under The FLSA</u>

Defendants argue that Plaintiff Wanda Jones was exempt under the FLSA as both an executive employee and a highly compensated employee. As Defendants correctly note, exemptions are affirmative defenses in which they have the burden of proof. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974). The Court should construe the exemptions narrowly against the Defendants, and they have "the burden [of proof] on *each element* of the claimed exemption." *Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 578 (6th Cir. 2004) (internal citations omitted) (emphasis added). Moreover,

6

the Court must deny Defendants' Motion if Defendants cannot show that Plaintiff Wanda Jones "meets each and every element of the exemption[s]." *Id.* In fact, if the Court agrees with Plaintiffs' motion for partial summary judgment and Defendants cannot even show a genuine dispute of material fact as to each element, the Court must grant summary judgment to Plaintiff Wanda Jones. *Id.*

In support of their contention that Plaintiff Wanda Jones was an exempt executive employee, Defendants rely on outdated regulations and ignore the 2004 amendments to the regulations concerning executive employees. This error dooms their request for summary judgment on the issue, as there is no genuine dispute of material fact that Plaintiff Wanda Jones does not meet the criteria to be an exempt executive employee. In the best case scenario for Defendants, there is a genuine dispute of material fact regarding the elements of the exemption such that the Court should deny their Motion as to the executive exemption.

While Defendants cite the correct regulation for the highly compensated exemption, the Court should deny their Motion with respect to this exemption as well. First, viewing the evidence in the light most favorable to her, Plaintiff Wanda Jones does not meet the criteria for the highly compensated executive exemption because her total annual compensation, as defined in 29 C.F.R. § 541.601(b), did not exceed $100,000 in any of the years of the relevant time period. Second, even if the Court finds that her total annual compensation did exceed $100,000, there is no genuine dispute of material fact as to whether Plaintiff Wanda Jones performed any of the duties of an executive employee – clearly, she did not. Therefore, the Court should deny Defendants' Motion as to the highly compensated employee exemption and grant summary judgment to Plaintiff Wanda Jones. Finally, even if the Court finds a genuine dispute of material fact as to whether Plaintiff Wanda Jones performed any of the duties of an exempt employee, the Court still must deny Defendants' Motion.

A.      Executive Exemption

Plaintiff Wanda Jones was not an executive employee because her primary duty was not management of Defendants' enterprise or a customarily recognized department or subdivision of

7

Defendants; she did not customarily and regularly direct the work of two or more fulltime employees; she did not have the ability to hire, fire, or promote other employees; and her suggestions and recommendations regarding hiring, firing, or promoting other employees were not given particular weight. The Department of Labor has promulgated rules relating to when an employee is exempt. Each rule requires a defendant to satisfy three (3) tests: a duties test, a salary-level test, and a salary-basis test. *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 846 (6th Cir. 2012). An exempt executive employee is "any employee:

(1)     Compensated on a salary basis at a rate of not less than $455 per week . . . ;

(2)     Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3)     Who customarily and regularly directs the work of two or more other employees; and

(4)     Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight."

29 C.F.R. § 541.100 (2013).[6]  While Plaintiff Wanda Jones concedes *arguendo* that she was paid on a salary-basis and that her pay met the salary-level test during the relevant time period,[7] Plaintiff Wanda Jones did not meet the criteria for the duties test and, therefore, was non-exempt.

1.     <u>Primary Duty is Management</u>

Plaintiff Wanda Jones' primary duty was not the management of Defendants' enterprise or a customarily recognized department or subdivision thereof for three reasons. First, Plaintiff Wanda Jones did not perform management functions for Defendants. Second, even if she did perform management functions, Plaintiff Wanda Jones' primary duty was not management of Defendants'

---

[6] While Defendants' Motion relies on the short test (Defs.' Mem. of Law 13, Docs. 47-49), the 2004 regulation removed the distinction between the short and long tests and replaced them with the test in 29 C.F.R. § 541.100, *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 502 n.3 (6th Cir. 2007).

[7] The spreadsheet identified by Defendants as Attachment 4 (Doc. 69) to Defendants' Exhibit A (Doc. 65-1) indicates that, during June 2009, Plaintiff Wanda Jones' "Draw" was only $1,400 for the month. There were four (4) full workweeks during June 2009. Thus, Defendants paid Plaintiff Wanda Jones only $350 per week during June 2009, so Plaintiff Wanda Jones did not meet the salary level test for that month. Plaintiff Wanda Jones notes, however, that her motion to strike covers this document.

enterprise or a subdivision of it. Finally, even if management was her primary duty, the Plaintiffs did not constitute a "customarily recognized department or subdivision".

      a.     Management

In defining management, Defendants rely on the pre-2004 former version of 29 C.F.R. § 541.102. (*See* Defs.' Mem. of Law 13, Doc. 47-49 (citing "29 C.F.R. 541.102(b) (2011)").) However, the quoted language is substantially the same as the current regulation. *See* 29 C.F.R. 541.102 (2013). Defendants argue that Plaintiff Wanda Jones interviewed, selected, and trained the other Plaintiffs and Jessica James; determined how much compensation the other Plaintiffs would receive; directed the work of the other Plaintiffs; handled grievances "on behalf of" the other Plaintiffs; and held herself out as Defendants' director of billing. (Defs.' Mem. of Law 13-14, Docs. 47-49.) Therefore, they claim, Plaintiff Wanda Jones performed management work for Defendants. However, Plaintiff Wanda Jones' actual job functions did not rise to the level of these duties, which are but a fraction of those listed in the regulation.

First, Plaintiff Wanda Jones did not interview or select the other Plaintiffs or Jessica James. Plaintiff Tiffany Jones was hired by Defendants as well as Brenda and Johnny Nesmith, not Plaintiff Wanda Jones. (Defs.' Ex. J (W. Jones Dep., Doc. 77) pp. 51-52, lines 25-13; pp. 53-54, lines 17-6; p. 56, lines 15-17; Pls.' Ex. 2 (T. Jones Decl., Doc. 86-1) ¶ 3.) Plaintiff Pendergrass was likewise hired by Defendants, not Plaintiff Wanda Jones. (Defs.' Ex. J (W. Jones Dep., Doc. 77) p. 56, lines 15-17; Pls.' Ex. 3 (Pendergrass Decl., Doc. 87-1) ¶¶ 4-5, 24)  Additionally, Jessica James was hired by Defendants rather than Plaintiff Wanda Jones. (Defs.' Ex. J (W. Jones Dep., Doc. 77) pp. 54, lines 7-22; Pls.' Second Notice of Filing, Ex. 1 (Jessica James Decl.) ¶ 11.) For support of their contention that Plaintiff Wanda Jones hired the other Plaintiffs, Defendants cherry-pick from inartful comments in the depositions of Plaintiff Wanda Jones and Plaintiff Pendergrass, while ignoring the context and overall thrust of the depositions. The parts of Plaintiff Wanda Jones' deposition cited above are more representative of the testimony. Moreover, the statements in Plaintiffs' declarations support the finding

that Plaintiff Wanda Jones did not interview or select the other Plaintiffs. Finally, while Defendants cite Jessica James' February 21, 2013, Affidavit to support their contention that Plaintiff Wanda Jones hired her, Ms. James' June 26, 2013, declaration, which serves to clarify her earlier affidavit, makes it clear that Plaintiff Wanda Jones just delivered a contract prepared by Defendants. (Pls.' Second Notice of Filing, Ex. 1 (Jessica James Decl.) ¶ 11.)

Second, Plaintiff Wanda Jones did not train the other Plaintiffs or Jessica James. (Pls.' Ex. 2 (T. Jones Decl., Doc. 86-1) ¶ 6; Pls.' Ex. 3 (Pendergrass Decl., Doc. 87-1) ¶ 6.) Likewise, she did not train Jessica James. (Pls.' Second Notice of Filing, Ex. 1 (Jessica James Decl.) ¶ 16.) None of Defendants' citations to the February 21, 2013, Affidavit of Jessica James or the depositions of Plaintiff Wanda Jones or Plaintiff Pendergrass provide any support for their contention.

Third, Plaintiff Wanda Jones did not determine how much compensation the other Plaintiffs would receive. In fact, both of the Other Plaintiffs agree Defendants set the rate of pay. (Pls.' Ex. 2 (T. Jones Decl., Doc. 86-1) ¶¶ 7-9; Pls.' Ex. 3 (Pendergrass Decl., Doc. 87-1) ¶¶ 6-9.) To support their contention, Defendants rely on Attachment 3 (Doc. 68) to their Exhibits A and B and an excerpt from the deposition of Brenda Nesmith (Defs.' Ex. K, Doc. 79). Attachment 3, which is a document dump of old paystubs for Plaintiff Pendergrass and some handwritten lists of hours worked in 2009, is subject to Plaintiffs' Motion to Strike and should be disregarded. Even if the Court considers the attachment, however, there is no support for Plaintiff Wanda Jones deciding how much money either of the other Plaintiffs was to receive. Moreover, while Mrs. Nesmith has alleged that Plaintiff Wanda Jones instructed her how much to pay Other Plaintiffs out of the "Five Percent (5%) Base", Plaintiff Wanda Jones disputes this notion. In fact, Plaintiff Wanda Jones does not know how the bonuses paid to her or the other Plaintiffs were calculated. (Pls.' Ex. 1 (W. Jones Decl., Doc. 85-1) ¶¶ 5, 17, 36.) In the best case for Defendants, there is a genuine dispute of material fact regarding this part of the management analysis.

Fourth, Plaintiff Wanda Jones did not "direct[] the work of" the other Plaintiffs. *See* 29 C.F.R. § 541.102 (2013). Plaintiff Wanda Jones merely served as "the central gathering and coordinating place for billing information". (Pls.' Ex. 1 (W. Jones Decl., Doc. 85-1) ¶ 30.) She was not a member of management or a supervisor, and she never asked to be one. (*Id.* at ¶ 29.) Indeed, neither the other Plaintiffs nor Jessica James thought of Plaintiff Wanda Jones as their supervisor, nor were they evaluated by Plaintiff Wanda Jones. (Pls.' Ex. 2 (T. Jones Decl., Doc. 86-1) ¶ 6; Pls.' Ex. 3 (Pendergrass Decl., Doc. 87-1) ¶¶ 6, 35; Pls.' Second Notice of Filing **Ex. 1** (Jessica James Decl.) ¶¶ 10, 12-13.) While Defendants make much of the fact that Plaintiff Wanda Jones physically handed the assignments to the other Plaintiffs, Plaintiff Wanda Jones was merely the conduit through which the instructions from Defendants passed to the other Plaintiffs and Jessica James. (Pls.' Ex. 1 (W. Jones Decl., Doc. 85-1) ¶ 30; Pls.' Second Notice of Filing **Ex. 1** (Jessica James Decl.) ¶ 8.) All of the Plaintiffs followed the same, routinized process expected by Defendants. (Pls.' Ex. 1 (W. Jones Decl., Doc. 85-1) ¶¶ 7, 11; Pls.' Ex. 2 (T. Jones Decl., Doc. 86-1) ¶¶ 10-11; Pls.' Ex. 3 (Pendergrass Decl., Doc. 87-1) ¶¶ 9, 19.)

Fifth, there is no evidence to support the contention that Plaintiff Wanda Jones "handl[ed]" the complaints and grievances of the other Plaintiffs. *See* 29 C.F.R. § 541.102 (2013). At most, Plaintiff Wanda Jones served as a go-between between Defendants and the other Plaintiffs or Jessica James. At times, Plaintiff Wanda Jones would speak to Defendants on behalf of Plaintiff Tiffany Jones if the latter needed supplies or there was a general problem. (Pls.' Ex. 2 (T. Jones Decl., Doc. 86-1) ¶ 20; Defs.' Ex. I (T. Jones Dep., Doc. 76) pp. 18-19, lines 21-5.) Plaintiff Wanda Jones would also sometimes inform Defendants if Plaintiff Tiffany Jones needed time off. (Defs.' Ex. I (T. Jones Dep., Doc. 76) pp. 35-36, lines 20-4.) However, Plaintiff Tiffany Jones was able to conduct those conversations as well. (Pls.' Ex. 2 (T. Jones Decl., Doc. 86-1) ¶ 20; Defs.' Ex. I (T. Jones Dep., Doc. 76) pp. 18-19, lines 21-5.) Plaintiff Wanda Jones at times spoke to Defendants on Plaintiff Pendergrass' behalf as well. (Defs.' Ex. H (Pendergrass Dep., Doc. 75) p. 14, lines 12-18; p. 18, lines 7-14.) However, Plaintiff Wanda Jones did not "handle" their grievances and complaints in the sense that "handle" means "to deal with."

"[H]andle." Merriam-Webster Online Dictionary http://www.merriam-webster.com/dictionary/handle (last visited July 15, 2013). Plaintiff Wanda Jones did not "deal with" the grievances and complaints of the other Plaintiffs and Jessica James; instead she merely passed them along to Defendants.

Finally, Defendants argue that Plaintiff Wanda Jones "held herself out to be the director of billing for Defendant Elite." (Defs.' Mem. of Law 14, Docs. 47-49.) This contention ignores the clear testimony from the Plaintiffs that Plaintiff Wanda Jones was not a member of management. For example, Defendants put her name and the title in the contracts for the other Plaintiffs. (Pls.' Ex. 1 (W. Jones Decl., Doc. 85-1) ¶ 29.) Plaintiff Wanda Jones was not a member of Defendant Elite's management, and she never asked to be. (*Id.*) The other Plaintiffs and Jessica James likewise never thought of her as a supervisor, let alone a director of billing. (Pls.' Ex. 2 (T. Jones Decl., Doc. 86-1) ¶ 6; Pls.' Ex. 3 (Pendergrass Decl., Doc. 87-1) ¶¶ 6, 35; Pls.' Second Notice of Filing **Ex. 1** (Jessica James Decl.) ¶¶ 10, 12-13.) While Defendants correctly point out that Plaintiff Wanda Jones had business cards with the title on it, those cards were provided by Defendants indicating that Defendants were the ones who held Plaintiff Wanda Jones out as the Director of Billing, not Plaintiff. (Pls.' Ex. 1 (W. Jones Decl., Doc. 85-1) ¶ 29.)

Thus, there is no genuine dispute of material fact as to whether Plaintiff Wanda Jones' job duties included management. Even taking the evidence in the light most favorable to the Defendants, which is the opposite standard for their Motion for Summary Judgment but relevant to Plaintiffs' affirmative Motion for Partial Summary Judgment, at best there is a genuine dispute as to whether Plaintiff Wanda Jones engaged in one management function – directing the pay for the other Employees. Defendants' final contention, that Plaintiff Wanda Jones held herself out as director of billing, is not a factor listed in 29 C.F.R. § 541.102. Even if it is relevant, Plaintiff Wanda Jones was not holding herself out as a director of billing – instead, Defendants just provided a label. As Defendants correctly point out in their Memoranda of Law, the Court must look beyond Defendants' description of Plaintiff Wanda Jones and instead examine her actual duties. (Defs.' Mem. of Law 14-15, Docs. 47-49 (citing *Ale v. Tenn. Valley*

*Auth.*, 269 F.3d 680, 692 (6th Cir. 2001).) Therefore, there is no genuine dispute of material fact as to whether Plaintiff Wanda Jones engaged in management functions – she did not.

        b.      Primary Duty

Even if the Court finds that Plaintiff Wanda Jones did engage in management functions, or that there is a genuine dispute of material fact regarding that question, such functions were certainly not Plaintiff Wanda Jones' primary duty. An employee's "primary duty" is her "principal, main, major, or *most important* job duty." 29 C.F.R. § 541.700(a) (2013) (emphasis added); *Henry v. Quicken Loans, Inc.*, 698 F.3d 897, 899 (6th Cir. 2012) (finding that an employee's primary duty "connotes the 'principal' or 'chief' – meaning most important – duty performed by the employee) (quoting *Thomas*, 506 F3d at 504). Important factors for the Court to consider "include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; *the amount of time spent performing exempt work*; the employee's relative freedom from direct supervision; and the relationship between the employee's *salary* and the wages paid to other employees for the kind of nonexempt work" she performs. 29 C.F.R. § 541.700(1) (2013) (emphases added). Three of these factors clearly favor finding that Plaintiff Wanda Jones' alleged management functions were not her primary duty, while the effect of the fourth is murky at best.

In arguing that Plaintiff Wanda Jones' exempt functions were more important than her non-exempt functions, Defendants first present two hypotheticals. (Defs.' Mem. of Law 15, Docs. 47-49.) According to Defendants, if Plaintiff Wanda Jones had not performed her "non-managerial duties," the billing would have been less efficient. (*Id.*) On the other hand, had Plaintiff Wanda Jones not performed her "managerial duties", the "turn around times" would have become so inefficient that the medical billing function would cease to exist. (*Id.*) Defendants also state that one of Plaintiff Wanda Jones' "primary managerial duties" was distributing the workload among the other people performing billing services. (*Id.*)

There are several problems with Defendants' analysis. First, Defendants provide absolutely no support for their hypotheticals. They do not explain how the managerial functions they identified earlier in their Memoranda were crucial to the efficiency of the billing process. In fact, the opposite conclusion could just as easily be reached – if Plaintiff Wanda Jones had simply interviewed, selected, and trained the other Plaintiffs; determined their compensation; directed their work; and handled their grievances and complaints; Defendants' billing could not have been completed. Plaintiff Wanda Jones estimates that she worked 8,538 total hours during the relevant period. (*See* Pls.' Ex. 1 (W. Jones Decl., Doc. 85-1) ¶ 22.) During the same period, Plaintiff Tiffany Jones estimates that she worked 6,641 hours (Pls.' Ex. 2 (T. Jones Decl.) ¶ 24, Doc. 86-1), and Plaintiff Pendergrass estimates that she worked 8,158 hours (Pls.' Ex. 3 (Pendergrass Decl. , Doc. 87-1) ¶ 28). Thus, Plaintiff Wanda Jones worked more than 36.5% of the hours for which anybody performed billing services for Defendants.[8] (*See* Defs.' Mem. of Law 4, Docs. 47-49 (describing that Defendants' alleged "Five Percent (5%) Base" as "the only compensation basis utilized by Defendant Elite during 2009, 2010, and 2011 for the performance of all [of] Defendant Elite's Emergency Service billings.")) Thus, it seems more likely that, if Plaintiff Wanda Jones had ceased doing her billing work, Defendants would have sought other means to bill their client hospitals.

Second, even if the Court accepts the hypothetical outcomes as true, Defendants misunderstand the regulation. According to 29 C.F.R. § 541.700, an employee may only have one primary duty. *See* 29 C.F.R. § 541.700(a) (2013). ("The term 'primary duty' means *the* principal, main, major or *most important* duty that the employee performs'" (emphases added)); *see also* Exemptions, 69 Fed. Reg. 22,122, 22,131 (Apr. 23, 2004) (noting that "an employee can have only one primary duty"). Even if Plaintiff Wanda Jones' duty was to apportion out the workload, it was not her "primary duty".

Defendants also rely on the third factor, arguing that Plaintiff Wanda Jones was "totally free from supervision." (Defs.' Mem. of Law 16, Docs. 47-49.) While Defendants are not wrong in the sense that they did not affirmatively direct her work on a daily basis, all Plaintiffs agree that the billing

---

[8] $8538 + 6641 + 8158 = 23,337.$ $8538/23,337 = 36.585\%.$

14

process was routinized in such a way that Defendants expected them to perform in one fashion. (Pls.' Ex. 1 (W. Jones Decl., Doc. 85-1) ¶ 6; Pls.' Ex. 2 (T. Jones Decl., Doc. 86-1) ¶¶ 10-11; Pls.' Ex. 3 (Pendergrass Decl., Doc. 87-1) ¶¶ 9, 19.) Additionally, Plaintiff Wanda Jones would have done her work in another way, if Defendants had so requested. (Pls.' Ex. 1 (W. Jones Decl., Doc. 85-1) ¶ 12.) Thus, this factor does not provide much help either way.

Defendants' reliance on the fourth factor, comparing Plaintiff Wanda Jones' salary to the wages paid other employees for the non-exempt work, is misplaced. Defendants correctly point out that they paid Plaintiff Wanda Jones substantially more money during the relevant time period than the other Plaintiffs. (Defs.' Mem. of Law 16, Docs 47-49.) However, the text of the regulation says that the proper comparison is Plaintiff Wanda Jones' "salary and the wages paid to" the other Plaintiffs. 29 C.F.R. § 541.700 (2013). A salary is defined in 29 C.F.R. § 541.602 as the amount an "employee regularly receives each pay period on a weekly, or less frequent basis, [which is a] predetermined amount . . . not subject to reduction because of variations in the quality or quantity of the work performed". Thus, Plaintiff Wanda Jones' salary is the base amount she received before she earned any bonus from Defendants. When Plaintiff Wanda Jones started, she was paid $600 per week, which was based on an assumed forty (40) hours at $15 per hour. (Pls.' Ex. 12 (Independent Contractor Agreement for W. Jones, Doc. 96-1); Pls.' Ex. 1 (W. Jones Decl., Doc. 85-1) ¶ 4.) Ultimately, Plaintiff Wanda Jones earned $700 per week, which was based on an hourly rate of $17.50. (Pls.' Ex. 1 (W. Jones Decl., Doc. 85-1) ¶ 4.) The other Plaintiffs each earned $640 per week, which was based on an hourly rate of $16.00. (Pls.' Ex. 13 (Work for Hire Agreement for T. Jones, Doc. 97-1); Pls.' Ex. 2 (T. Jones Decl., Doc. 86-1) ¶ 5; Pls.' Ex. 14 (Work For Hire Agreement for Kelly Pendergrass, Doc. 98-1); Pl.'s Ex. 3 (Pendergrass Decl., Doc. 87-1) ¶ 7.) Thus, Plaintiff Wanda Jones received a substantially similar amount as the other Plaintiffs, with a slight increase attributable to her extensive experience, both in the field and with Defendants.

Defendants' biggest problem is their omission of the second factor from consideration. The second factor directs the Court to look at the amount of time spent performing exempt work. Even if Defendants have correctly identified all of Plaintiff Wanda Jones' exempt job functions and are correct that Plaintiff Wanda Jones did not work any overtime, Plaintiff Wanda Jones still clearly spent the vast majority of her time performing non-exempt work. Defendants do not provide an estimate of the amount of time she spent performing exempt work. However, even if that amounted to ten (10) hours per week, she still spent thirty (30) hours performing non-exempt work, based on her contract provision that expected her to work forty (40) hours every week. Of course, Plaintiff Wanda Jones contends that she worked a total of 2,238 overtime hours for a total of 8,538 hours during the relevant time period. (*See* Pls.' Ex. 1 (W. Jones Decl., Doc. 85-1) ¶ 22.) Even if she spent ten (10) hours every week for three (3) years, Plaintiff Wanda Jones would have only spent 1,560 of her 8,538 total hours doing exempt work, which amounts to less than twenty percent (20%) of her time.

   c.  Customarily Recognized Department or Subdivision

Assuming that Defendants have shown that Plaintiff Wanda Jones' primary duty consisted of management, they cannot show that Plaintiffs made up a *customarily recognized* department or subdivision during 2009 and 2010. Defendants spend a significant part of their Memoranda of Law arguing that Plaintiffs were not employees during 2009 and 2010 but were instead independent contractors. While the legal designation of a worker as an independent contractor or employee is a matter of law, *LeMaster v. Alternative Healthcare Solutions, Inc.*, 726 F.Supp.2d 854, 860 (M.D. Tenn. 2010) (internal citations omitted), the phrase "customarily recognized" is by its nature a question of fact. Thus, the Court's finding that Plaintiffs were employees rather than independent contractors should not be dispositive of whether they were a customarily recognized department or subdivision. Instead, the Court should review the relevant facts in the record to determine whether Defendants customarily recognized Plaintiffs as a department or subdivision.

It is clear that Defendants did not view Plaintiffs as constituting a department or subdivision of Elite. First, Elite labeled Plaintiff Wanda Jones an independent contractor rather than an employee in their "Independent Contractor Agreement." (Pls.' Ex. 13 (Work for Hire Agreement for T. Jones, Doc. 97-1); Pls.' Ex. 2 (T. Jones Decl., Doc. 86-1) ¶ 5; Pls.' Ex. 14 (Work For Hire Agreement for Kelly Pendergrass, Doc. 98-1); Pl.'s Ex. 3 (Pendergrass Decl., Doc. 87-1) ¶ 7.) Additionally, the other Plaintiffs' "Work for Hire Agreement[s]" also characterize them as independent contractors. (Pls.' Ex. 13, Doc. 97-1 (Plaintiff T. Jones); Pls.' Ex. 14, Doc. 98-1 (Plaintiff Pendergrass).) Moreover, Defendant Elite's former chief financial officer, Brenda Nesmith, testified repeatedly that Plaintiffs were simply independent contractors or contract laborers. (Defs.' Ex. K (Nesmith Dep., Doc. 79), p. 148, lines 15-25 (Plaintiff W. Jones); p. 97, lines 3-4 (the other Plaintiffs).) Mrs. Nesmith, who was CFO when all of the Plaintiffs started (*id.* p. 51, lines 8-17), believed that Plaintiff Tiffany Jones' contract was with Plaintiff Wanda Jones, who also hired Plaintiff Pendergrass according to Mrs. Nesmith (*id.* at pp. 71-72, lines 21-9; pp. 92-93, lines 21-9). Given that Mrs. Nesmith was the CFO, it seems fair to attribute her beliefs to Elite. Thus, even if Plaintiff Wanda Jones' primary duty was management, there is no genuine dispute of material fact about whether Plaintiffs constituted a customarily recognized department or subdivision of Elite.

2. Regularly and Customarily Directs the Work of Two Employees

In order to satisfy this prong of the exemption, Defendants must show that Plaintiff Wanda Jones directed the work of at least two (2) "full-time employees or their equivalent." 29 C.F.R. § 541.104 (2013). Functionally, this means an exempt employee "must direct a total of 80 employee-hours of work each week." Exemptions, 69 Fed. Reg. 22,122, 22,135 (Apr. 23, 2004). In their Memoranda of Law in Support of their Motion for Summary Judgment against the other Plaintiffs, Defendants argue that neither of the other Plaintiffs worked overtime during the entire period. (11-13.) Viewing the evidence in the light most favorable to Plaintiff Wanda Jones means, for the purposes of this prong of the exemption, accepting Defendants' assertion. If Other Plaintiffs did not work more than

17

forty (40) hours in any week, it seems unlikely that they worked exactly forty (40), either. When viewed in the light most favorable to Defendants, as the Court would in evaluating Plaintiffs' Motion for Partial Summary Judgment, Plaintiff Wanda Jones meets the two (2) employee requirement.

However, even if the Court finds that there were two (2) other full-time employees or their equivalent, Plaintiff Wanda Jones did not regularly and customarily direct their work. In fact, she did not direct their work at all. In their Memoranda of Law, Defendants do not examine whether Plaintiff Wanda Jones directed the work of the other Plaintiffs under this prong. However, they do examine the issue in the context of whether Plaintiff Wanda Jones performed management functions. Plaintiff Wanda Jones reiterates that she simply was "the central gathering and coordinating place for billing information" (Pls.' Ex. 1 (W. Jones Decl., Doc. 85-1) ¶ 30), was not a member of management or a supervisor, and never asked to be one. (*Id.* at ¶ 29.) Moreover, neither the other Plaintiffs nor Jessica James thought of Plaintiff Wanda Jones as their supervisor, nor were they evaluated by Plaintiff Wanda Jones. (Pls.' Ex. 2 (T. Jones Decl., Doc. 86-1) ¶ 6; Pls.' Ex. 3 (Pendergrass Decl., Doc. 87-1) ¶¶ 6, 35; Pls.' Second Notice of Filing **Ex. "1"** (Jessica James Decl.) ¶¶ 10, 12-13.) While Defendants make much of the fact that Plaintiff Wanda Jones physically handed the assignments to the other Plaintiffs, Plaintiff Wanda Jones was merely the conduit through which the instructions from Defendants passed to Other Plaintiffs and Jessica James. (Pls.' Ex. 1 (W. Jones Decl., Doc. 85-1) ¶ 30; Pls.' Second Notice of Filing **Ex. "1"** (Jessica James Decl.) ¶ 8.) All of the Plaintiffs followed the same, routinized process expected by Defendants. (Pls.' Ex. 1 (W. Jones Decl., Doc. 85-1) ¶¶ 7, 11; Pls.' Ex. 2 (T. Jones Decl., Doc. 86-1) ¶¶ 10-11; Pls.' Ex. 3 (Pendergrass Decl., Doc. 87-1) ¶¶ 9, 19.)

Defendants do not introduce any affirmative evidence showing that Plaintiff Wanda Jones customarily and regularly directed the work of any other employees. Defendants' contention, based on their citations to the record, is grounded on Defendants providing the medical charts to Plaintiff Wanda Jones who then distributed them to the other Plaintiffs, Plaintiff Wanda Jones conveying Defendants' instructions to the other Plaintiffs, an affirmative response to Defendants' counsel's question of whether

Plaintiff Wanda Jones "ever [went] back to check [the other Plaintiffs'] work to make sure it was okay," and the other Plaintiffs traveling to Plaintiff Wanda Jones' house to pick up their assignments. (Defs.' Mem. of Law 14, Docs. 47-49.) Interestingly, while Defendants cite Plaintiff Tiffany Jones' deposition testimony that she traveled daily to Plaintiff Wanda Jones' house (Defs.' Ex. I (T. Jones Dep., Doc. 76), p. 38, lines 21-24), they omit her statement just a few lines later that she also went to Plaintiff Pendergrass' house as well to pick up charts (*id.* at p. 39, lines 1-8). There is simply a dearth of support for Defendants' contention that Plaintiff Wanda Jones regularly and customarily directed the work of the other Plaintiffs, while all Plaintiffs, as well as Jessica James, are consistent in their contention that Plaintiff Wanda Jones was not a supervisor. Thus, a genuine dispute of material fact does not exist about whether Plaintiff Wanda Jones regularly and customarily directed the work of two (2) employees – it is clear that she did not.

> 3. Authority to Hire, Fire, or Promote

Much like the second prong of the duties test for the executive employee exemption, Defendants do not provide specific analysis on Plaintiff Wanda Jones' ability to hire, fire, or promote other employees. However, in support of their contention that Plaintiff Wanda Jones performed management functions, Defendants state that Plaintiff Wanda Jones "interviewed [and] selected . . . all alleged employees who performed emergency billing services" for Defendants. (Defs.' Mem. of Law 13, Docs. 47-49.) Nevertheless, the evidence in the record clearly shows that Plaintiff Wanda Jones neither hired the other Plaintiffs or Jessica James nor had the authority to hire, fire, discipline, or evaluate other employees. First, Defendants, along with Brenda and Johnny Nesmith, hired Plaintiff Tiffany Jones. (Defs.' Ex. J (W. Jones Dep., Doc. 77) pp. 51-52, lines 25-13; pp. 53-54, lines 17-6; p. 56, lines 15-17; Pls.' Ex. 2 (T. Jones Decl., Doc. 86-1) ¶ 3.) Similarly, Defendants hired Plaintiff Pendergrass (Defs.' Ex. J (W. Jones Dep., Doc. 77) p. 56, lines 15-17, Doc. 77; Pls.' Ex. 3 (Pendergrass Decl., Doc. 87-1) ¶¶ 4-5, 24) and Jessica James (Defs.' Ex. J (W. Jones Dep., Doc. 77) p. 56, lines 15-17; Pls.' Second Notice of Filing, **Ex. 1** (Jessica James Decl.) ¶¶ 7, 10-11). Moreover, all of the Plaintiffs agree that Plaintiff

19

Wanda Jones did not have the authority to hire, fire, discipline, or evaluate other employees. (Pls.' Ex. 1 (W. Jones Decl., Doc. 85-1) ¶ 28; Pls.' Ex. 2 (T. Jones Decl., Doc. 86-1) ¶¶ 3, 6; Pls.' Ex. 3 (Pendergrass Decl., Doc. 87-1) ¶ 35.) Consequently, a genuine dispute of material fact does not exist about whether Plaintiff Wanda Jones had the ability to hire, fire, or promote other employees – clearly, that authority did not exist.

B.    Highly Compensated Employee Exemption

Plaintiff Wanda Jones does not meet the criteria for the highly compensated employee exemption. To be exempt, an employee's "total annual compensation" must be at least $100,000, and she must "customarily and regularly perform[] any one or more of the exempt duties or responsibilities of an executive[] . . . employee." 29 C.F.R. § 541.601 (2013).[9] Defendants' contention fails for two (2) reasons. First, Plaintiff Wanda Jones' "total annual compensation" did not exceed $100,000 during any of the years of the relevant time period. Second, even if the Court finds that she met the compensation requirement, there is no genuine issue of material fact as to whether Plaintiff Wanda Jones customarily and regularly performed any of the exempt duties of an executive employee, as the record is clear that she did not. Third, even if the Court finds that a genuine dispute of material fact exists, it should still deny Defendants' Motion for that very reason.

"Total annual compensation" includes an employee's salary and any "commissions, *nondiscretionary* bonuses, and other *nondiscretionary* compensation earned during a 52-week period." 29 C.F.R. § 541.601(b)(1) (2013) (emphases added). Defendants' support for finding Plaintiff Wanda Jones exempt is that she was paid over $100,000 in 2010 and 2011. (Defs.' Mem. of Law 17, Docs. 47-49.) By not alleging that she was paid over $100,000 in 2009, Defendants concede that the highly compensated employee exemption did not apply to Plaintiff Wanda Jones in 2009. Thus, the exemption would only apply, if at all, to 2010 and/or 2011.

---

[9] The exemption also covers employees who perform any duties or responsibilities of an administrative or professional employee. 29 C.F.R. § 541.601 (2013). However, Defendants only rely on the executive exemption (Defs.' Mem. of Law 17), so Plaintiff Wanda Jones will not consider the other exemptions. If Defendants try to use any of the other exemptions in their Reply, the Court should grant Plaintiff Wanda Jones a sur-reply to address those issues.

Defendants' own Statement of Undisputed Facts dooms their contention that Plaintiff Wanda Jones' total annual compensation exceeded $100,000 during those years. For the purposes of the so-called "white collar exemptions," the amount paid to an employee on a salary basis only includes "predetermined" amounts of pay. *Kaiser v. At The Beach, Inc.*, No. 08-CV-586-TCK-FHM, 2010 WL 5114729, at *17 (N.D. Okla. Decl. 9, 2010) (citing 29 C.F.R. § 541.601(b)); *see Zelenika v. Commonwealth Edison Co.*, No. 09 C 2946, 2012 WL 3005375, at *11 (N.D. Ill. July 23, 2012) (describing the highly compensated exemption as "a regulatory gloss on the administrative and executive exemptions, not a separate affirmative defense.").

First, Defendants assert that Plaintiff Wanda Jones received a biweekly draw of $1,400, which amounts to $700 per week and $36,400 annually. (Defs.' Statement of Undisputed Facts ¶ 22, Docs. 56-58.) Next, according to Defendants, Plaintiff Wanda Jones determined "how much of the remaining amount of the five percent (5%) collection basis was owed to her at the end of each calendar month" (*id.* at ¶ 23) and "how much of the remaining amount of the five percentage (5%) compensation basis would be distributed to the [other] Plaintiffs" (*id.* at ¶ 25). These statements are supported by Brenda Nesmith's deposition, in which she repeatedly testified that Plaintiff Wanda Jones told her how much of the percentage the other Plaintiffs were supposed to receive. (Defs.' Ex. K (Nesmith Dep., Doc. 79), p. 94, lines 4-17; p. 111, lines 5-21; p. 119, lines 12-22.) Thus, the amount of money Plaintiff Wanda Jones received beyond her biweekly draw was discretionary, as the "Plaintiffs, cumulatively, were compensated on the basis of five percent (5%) of the total amount of Defendant Elite's monthly collections received from Plaintiffs' billing services." (Defs.' Statement of Undisputed Facts ¶ 21, Docs. 56-58.) Plaintiff Wanda Jones, herself, is unclear as to how her bonus was calculated. (Pls.' Ex. 1 (W. Jones Decl., Doc. 85-1) ¶¶ 5, 17, 36) Regardless of whether the evidence is taken in the light most favorable to Plaintiff Wanda Jones or Defendants, it is clear from the record that whatever compensation Plaintiff Wanda Jones received in excess of $36,400 was discretionary. Therefore, that income is

excluded from the calculation of her "total annual compensation," and Plaintiff Wanda Jones' total annual compensation did not exceed $100,000.

Even if the Court finds that Plaintiff Wanda Jones' total annual compensation exceeded $100,000, Plaintiff Wanda Jones has laid out why there is no genuine dispute of material fact about whether she met any of the criteria of the executive exemption – she did not. At worst, there are genuine disputes of material fact, meaning that the Court should still deny Defendants' Motion. However, because none of the criteria for the executive exemption apply to her, the Court should find that, as a matter of law, the highly compensated employee exemption is inapplicable to Plaintiff Wanda Jones.

## C.   Spoliation

Defendants move for summary judgment against Plaintiff Wanda Jones and assert that she failed to retain evidence which she knew was pertinent to this litigation. (Defs.' Mem. of Law 20, Docs. 47-49.) This assertion has no basis in fact. Defendants rely on Plaintiff Wanda Jones' deposition to support their spoliation argument against her. Defendants extract statements from her deposition where she says that her company computer had crashed, that her brother looked at the computer to make sure the information it contained was erased, that she threw it in the garbage, that the computer did not crash until after she was terminated, and that she had used it after she was terminated. (Defs.' Exhibit "J", pp 34-35, lines 20-9; Exhibit "J", p. 35, lines 13-22; and Exhibit "J", pp. 109-110, lines 17-25, Doc. 77) Defendants contend that these statements prove that Wanda Jones committed spoliation of evidence.

The facts are that Plaintiff Wanda Jones and the other Plaintiffs were abruptly fired by Defendants on January 4, 2012. (Pl. Second Notice of Filing, **Collective Ex. 2**) Soon thereafter, Plaintiff Wanda Jones was presented with an Agreement made January 4, 2012, which required the destruction and confirmation of destruction of information pertinent to Defendants' business whether kept on computer or otherwise. (Pl. Second Notice of Filing, **Ex. 3**) The Agreement required Plaintiff Wanda Jones to confirm to Defendants:

1. That any information, directly or indirectly, related to the business of Elite ("*Information*") which was electronic saved on any computer to which [Plaintiffs] had access has been permanently deleted.

To meet the obligations of the Agreement, Plaintiff Wanda Jones requested her brother, who had computer experience through the military, to confirm that the information was not accessible and/or had been deleted. Because Defendants' laptop computer used by Plaintiff Wanda Jones to perform her work for Elite had crashed, rendering it essentially inoperable except to turn off and on, her brother determined that the information could not be accessed. Accordingly, Wanda Jones placed the laptop in the trash. She could not have retrieved information off the computer if she had wanted to. At that point, Plaintiff Wanda Jones could then truthfully enter into the Agreement made January 4, 2012, which she did on January 17, 2012. Defendants are attempting to hold Plaintiff Wanda Jones liable for spoliation of evidence when they required the destruction of that information. Defendants have pointed to no evidence which establishes that Plaintiff Wanda Jones entered into the Agreement knowing that she was going to be involved in a lawsuit against the Defendants and that she destroyed Defendants' information because of that fact. There is simply no evidence to support that conclusion. Conversely, there is evidence to support the fact that Wanda Jones confirmed the destruction of the information on the Defendants' laptop because she was contractually obligated to do so. [10]

The Sixth Circuit has recognized that federal law governs spoliation sanctions in all Federal Court cases, thereby bringing the case law in the Sixth Circuit "in line with other courts of appeals". *Atkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (*en banc*). The Sixth Circuit has pointed out that a spoliation ruling is evidentiary in nature and federal courts generally apply their own evidentiary rules in both federal question and diversity matters. *Id*. (citations omitted) The burden is on the party seeking to use the evidence to show the existence of each criterion. *Jandreau v. Nicholson*, 492 F.3d 1372, 1375 (Fed. Cir. 2007). The United States District Court for the Eastern District of Michigan has articulated in

---

[10] Interestingly, the cause of the destruction of the alleged evidence was when Defendants' laptop crashed on its own which was not the fault of any human being.

a three (3) part test the standard for spoliation of evidence. *Ulbrik, Jr., v. UPR Products, Inc.*, 2010 WL 6471887 (E.D. Mich.)

Even without Plaintiff's contractual obligation to destroy the company information, Plaintiff Wanda Jones would be successful in defeating the requirements of the three (3) part test as set forth in *UPR Products*. (2010 W.L. 6471887) The first prong of the three (3) part test is that Defendants must prove that Plaintiff had an obligation to preserve the evidence when she had notice that the evidence was relevant to litigation or when she should have known that the evidence may be relevant to future litigation. See *Fujitsu, Ltd., v. FedEx Express Corp.*, 247 F.3d 423, 436 (2nd Cir. 2001). Thus, the first step in the analysis is to determine the "trigger date" or "the date a party is put on notice that it has a duty to preserve evidence". *Clark Constr. Group, Inc. v. City of Memphis*, 229 F.R.D. 131, 136 (W.D. Tenn. 2005).

In addition to asking questions of Plaintiff in her deposition, Defendants sent a letter to Plaintiff dated June 2012 requesting the company computer and sent discovery requests inquiring about Plaintiff's computer. In each instance, Plaintiff answered the same: the computer had crashed; her brother, a military trained computer person, had confirmed that all information on the laptop was inaccessible; and Plaintiff placed the laptop in the garbage. All of Defendants' inquiries about this information were presented long after the computer had been thrown away. Moreover, at the point Plaintiff Wanda Jones placed the computer in the garbage, it was not because she was anticipating litigation in the future, but as a result of the Defendants' requirement that she enter into a contract which required the destruction of this information. She was abiding by the contract so that she could get paid her last check.

The Complaint in this matter was filed after the destruction of the Defendants' information, on February 23, 2012. (Complaint, Doc. 1) Defendants have set forth no evidence or plausible inference that Plaintiff Wanda Jones knew or should have known that she had an obligation to preserve evidence. The opposite was true: Defendants had contractually required her to destroy the information. With

24

respect to the second prong of the three (3) part test that the records were destroyed by Plaintiff with a culpable state of mind, Defendants have set forth no evidence of culpability or the state of mind of Plaintiff Wanda Jones with respect to her motivation. The only evidence of Plaintiff Wanda Jones' motivation was her obligation to comply with the terms and conditions of the January 4, 2012, Agreement. There is no evidence that Defendants have set forth that would establish a trigger date or that the state of mind of Plaintiff was to hamper this litigation. With respect to the third prong that the evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense, Defendants have failed to show what evidence which was allegedly destroyed or retained would have supported its defense or claims in the pending litigation. The Defendants' spoliation assertions against Plaintiff Wanda Jones are simply conjecture and not based on fact. Plaintiff Wanda Jones has not failed to disclose hourly logs she kept contemporaneously on her calendar because she did not do that. Plaintiff reconstructed her work hours for her counsel pursuant to his request. Therefore, a spoliation argument is inapplicable in the instant case.

For the foregoing reasons, Defendants' Motions for Summary Judgment should be denied in their entirety.

Respectfully submitted,

_____*/s/ Trevor W. Howell*_____
Trevor W. Howell, #9496
Attorney at Law
The Pinnacle at Symphony Place
150 Third Avenue South, 17th Floor
Nashville, TN 37201
(615) 244-4994 (O)
thowell@gsrm.com

Jason I. Coleman, #031434
Mays & Kerr, LLC
144 2nd Avenue North, Suite 205
Nashville, TN 37201
Jason@maysandkerr.com

*Attorneys for Plaintiffs*

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of July, 2013, a copy of the foregoing ***Plaintiff' Wanda Jones' Response to Defendants' Motion for Summary Judgment*** was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

Trevor W. Howell, Esq.                      Joshua L. Hunter, Esq.
The Pinnacle at Symphony Place        104 Clydelan Court
150 Third Avenue South, 17th Floor    Nashville, TN  37205
Nashville, TN 37201                          joshualewishunter@gmail.com
thowell@gsrm.com

Jason I. Coleman, Esq.                      Michael L. Russell, Esq.
Mays & Kerr, LLC                            Gilbert, Russell, McWherter, PLC
144 2nd Avenue North, Suite 205       5409 Maryland Way, Suite 150
Nashville, TN  37201                         Brentwood, TN  37027
Jason@maysandkerr.com                   mrussell@gilbertfirm.com


                                                    */s/ Trevor W. Howell*

26