# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| WANDA FAYE JONES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 3:12-cv-00203 |
| | ) | |
| v. | ) | Judge Nixon |
| | ) | Magistrate Judge Knowles |
| ELITE EMERGENCY SERVICES, LLC, et al., | ) | JURY DEMAND |
| | ) | |
| Defendants. | ) | |

## ORDER

Pending before the Court are Plaintiffs Wanda Faye Jones, Kelly Dorris Pendergrass, and Tiffany Shea Jones' Motion for Entry of Final Judgment Against Defendants (Doc. No. 143), in which they state Defendants are in total default of the Settlement Agreement approved by this Court (*see* Doc. No. 138) and move this Court to enter judgment against Defendants to enforce the Settlement Agreement. Also pending is Plaintiffs' Motion to Supplement the Motion for Entry of Final Judgment (Doc. No. 153). Magistrate Judge Knowles issued a Report and Recommendation ("Report") (Doc. No. 166) recommending that Plaintiffs' Motion for Entry of Final Judgment (Doc. No. 143) be granted.

Plaintiffs' Motion to Supplement (Doc. No. 153) is **GRANTED**. For the reasons stated below, the Magistrate Judge's Report (Doc. No. 166) is **ADOPTED** and Plaintiffs' Motion for Entry of Final Judgment (Doc. No. 143) is **GRANTED**.

Also pending is Plaintiffs' Second Supplement to their Motion for Entry of Final Judgment, in which Plaintiffs request entry of final judgment against Defendants, a declaration that Defendants' failure to bring their now-pending state court claims as counterclaims before this Court acts as a waiver of those claims, an injunction prohibiting Defendants from pursuing

1

the state court litigation, and attorney's fees. (Doc. No. 155 at 9.) For the reasons stated below, Plaintiffs' Motion for Entry of Final Judgment is **GRANTED**, but all other requested relief is **DENIED**.

Also pending is Defendants Elite Emergency Services, LLC ("Elite"), Samuel C. Clemmons, and Shannon Clemmons, individually and doing business as Elite's Motion for Relief From Order Pursuant to FRCP Rule 60(b). (Doc. No. 168.) For the reasons stated below, Defendants' Motion (Doc. No. 168) is **DENIED**.

Defendants' Motion to Strike (Doc. No. 170), in which they contend a section of Plaintiffs' Reply to Defendants' Rule 60(b) Motion should be stricken because it contains information covered by a state court Protective Order, is **TERMINATED as MOOT** pursuant to Plaintiffs' Response (Doc. No. 171 at 2) rescinding the section at issue.

## I. BACKGROUND

Plaintiffs are former Elite employees who sued Defendants on February 23, 2012, alleging Defendants intentionally misclassified them as independent contractors in order to avoid paying overtime wages and Federal Insurance Compensation Act taxes in violation of the Fair Labor Standards Act ("FLSA"). (Doc. No. 1 ¶¶ 16, 19.) On September 26, 2013, the parties filed a Joint Notice of Settlement and Motion to Transfer Case to Administrative Docket, stating:

> Because the settlement terms will not be fulfilled until all of the consideration is paid by Defendants and because the payment of said consideration will be made in installments over a seven (7) month period, it is moved that the trial date in this matter be indefinitely continued and that the case be transferred to the Court's Administrative Docket. A proposed Order of Dismissal will be submitted to the Court upon completion and execution of the terms of the Settlement Agreement.

(Doc. No. 130 at 1.) On September 27, 2013, this Court granted the parties' motion and ordered them to submit a proposed order of dismissal upon completion of the terms of the Settlement

Agreement. (Doc. No. 131.) The parties subsequently formalized their Settlement Agreement, and Plaintiffs submitted an Unopposed Motion for Leave to File Document Under Seal and for Approval of Settlement requesting that "the Court shall only enter an Order of dismissal with prejudice upon receipt of Plaintiffs' Notice of Final Payment of all amounts due under the terms of the attached Settlement Agreement," and asserting that Defendants did not object to the motion. (Doc. No. 136 ¶¶ 12, 13.) This Court approved the parties' Settlement Agreement (Doc. No. 137), in which Plaintiffs agreed to release all claims against Defendants in exchange for consideration, on December 18, 2013 (Doc. No. 138). Pursuant to the parties' Motions (Doc. Nos. 130, 136), the matter was not dismissed and this Court retained jurisdiction pending completion of the terms of the Settlement Agreement (Doc. No. 140).

Plaintiffs filed their Motion for Entry of Final Judgment Against Defendants on July 31, 2014, alleging Defendants failed to make any of the payments required by the Settlement Agreement. (Doc. No. 143.) In their Response in Opposition to Plaintiffs' Motion made on August 13, 2014, Defendants argued the motion should be denied because the Settlement Agreement contains a forum selection clause providing that "[t]he proper venue for any legal action resulting from a breach of this Agreement shall be the Chancery Court of Davidson County, Tennessee." (Doc. No. 149 at 2 (quoting Doc. No. 137 at 4).)

Defendants sued Plaintiffs, Johnny Nesmith, Russell Morrow, Ben Dearman, and Cellco Partnership d/b/a Verizon Wireless ("additional state court defendants") in the Circuit Court of Williamson County, Tennessee on August 4, 2014, under breach of contract, negligence, fraud, intentional interference with business relationships, invasion of privacy, and conspiracy theories. (Doc. No. 152-3 at 7–10.) Specifically, Defendants contend Nesmith hid "exculpatory evidence showing handwritten actual hours related to FLSA claims brought" by Plaintiffs, and that

3

Plaintiffs "conspired with Nesmith to injure [Defendants] and devalue Elite," including by opening unauthorized accounts, withholding billing documents, and converting Elite property. (*Id.* ¶¶ 16, 21, 22.)

Plaintiffs filed a Reply to Defendants' Response brief on August 28, 2014, claiming the state court lawsuit was filed in bad faith in retaliation for Plaintiffs' efforts to enforce the Settlement Agreement, and requesting attorney's fees and that Defendants be held in contempt for failing to satisfy their obligations under the Settlement Agreement. (Doc. No. 152 at 4–5, 9.) Plaintiffs filed two Supplements to their Motion for Entry of Final Judgment. In the first, Plaintiffs contend Defendants' evasive or unresponsive Responses to Requests for Admissions in the state court suit show Defendants are acting in bad faith. (Doc. Nos. 153 at 3–4.) The second indicates Defendants' state court claims against Plaintiffs were severed from those against the additional state court defendants and stayed pending the resolution of this case. (Doc. Nos. 155 at 2–3; 155-1 at 19.) In the second Supplement, Plaintiffs urge the Court to enter final judgment against Defendants, move the Court to prohibit Defendants from bringing state law claims against Plaintiffs in state court because Defendants waived the claims by failing to bring them as counterclaims in the federal proceeding, and seek attorney's fees and costs resulting from the allegedly duplicitous litigation. (Doc. No. 155 at 9.)

On December 29, 2014, Defendants filed a Response and Motion for Court to Decline Jurisdiction of Any Claims Brought in Williamson County Circuit Court, or, in the Alternative, to Accept Jurisdiction and Allow the Claims as Counterclaims. (Doc. No. 159.) In the Response, Defendants contend the state court claims would have been permissive counterclaims, not compulsory counterclaims, in federal court. (*Id.* at 9–11.) Defendants also contend the state court is the proper venue for their claims. However, "if this Court decides to accept jurisdiction, those

claims should be accepted by this Court." (*Id.* at 13.) Defendants attached a Counterclaim Complaint to their Response alleging Nesmith hid exculpatory records relating to Plaintiffs' FLSA claims (Doc. No. 159-1 ¶ 9), Plaintiffs engaged in malfeasance while employed by Elite (*id.* ¶ 14), Plaintiffs withheld Defendants' property after the end of their employment (*id.* ¶¶ 19–21), and Plaintiffs conspired with Nesmith to harm Defendants (*id.* ¶¶ 30, 33).

Plaintiffs filed a Reply on January 14, 2015, arguing again that Defendants' state court claims should have been raised as affirmative defenses or as compulsory counterclaims, and that Defendants are actually seeking belated relief under Rule 60 of the Federal Rules of Civil Procedure. (Doc. No. 162 ¶ 2.) Plaintiffs reiterated their earlier requests for relief and requested an injunction prohibiting further litigation of the state court case. (*Id.* ¶ 5.)

On August 31, 2015, Magistrate Judge Knowles issued a Report and Recommendation ("Report") recommending that Plaintiffs' Motion for Entry of Final Judgment (Doc. No. 143) be granted because this Court retained jurisdiction to enforce the Settlement Agreement until the parties satisfied their obligations under the Agreement. (Doc. No. 166 at 3.)

On September 14, 2015, Defendants filed their Objection to Report and Recommendation and Motion for Relief from Order Pursuant to FRCP Rule 60(b) contending the Settlement Agreement was "induced only by Plaintiffs' fraud." (Doc. No. 168 at 1.) Defendants make no objection to the content of the Magistrate Judge's report, but seek relief from this Court's order approving the Settlement Agreement under Federal Rule of Civil Procedure 60(b)(3), contending Plaintiffs fraudulently withheld information relevant to defending against Plaintiffs' lawsuit. (Doc. No. 168 at 2–6.) Plaintiffs filed a Response on September 28, 2015, contending Defendants' Motion for Relief is barred by Rule 60's one-year filing deadline. (Doc. No. 169 at 1.) Plaintiffs also contend the claims raised in Defendants' Rule 60(b) Motion are the same as the

5

claims currently pending against Plaintiffs in the Circuit Court for Williamson County, thus Defendants have admitted their claims could have been raised as defense by counterclaim or affirmative defense earlier in the proceedings before this Court. (*Id.* at 3.) Plaintiffs request the following relief: (1) an Order confirming that Defendants' claims pending in state court were waived or are barred by res judicata or collateral estoppel, and (2) granting Plaintiffs leave to apply for attorneys' fees incurred in enforcing the Settlement Agreement and defending against the claims in state court. (*Id.* ¶¶ 1–2.)

On November 16, 2015, Defendants filed a Reply and Motion to Strike Plaintiffs' Response to Defendants' Objection, contending Plaintiffs included certain information in their Response (Doc. No. 169) that violated the Agreed Protective Order (Doc. No. 170-1) entered in the Williamson County case. (Doc. No. 170 at 3–4.) Defendants reiterated "the sole reason for the failure to pay the settlement terms is based on the fraud and misrepresentation of the Plaintiffs," but the claims brought in the Williamson County case are not compulsory counterclaims because they are not related to the overtime dispute and therefore do not stem from a common nucleus of operative facts. (*Id.* ¶¶ 5, 10.) On November 20, 2015, Plaintiffs filed a Response agreeing that the footnote allegedly violating the Agreed Protective Order "may be stricken and disregarded," and reiterating that Defendants' claims in their Rule 60(b) Motion and state court case are the same. (Doc. No. 171 at 2.)

This Court ordered the parties to submit briefing on the applicability of the Anti-Injunction Act to Plaintiffs' requests for relief. (Doc. No. 172.) Plaintiffs (Doc. No. 173) and Defendants (Doc. No. 175) submitted briefs on the issue.

## II.  MOTION FOR INJUNCTIVE RELIEF

Plaintiffs seek to enjoin Defendants from pursuing their fraud claims in state court. (Doc. No. 162.) The All Writs Act provides that courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. However, courts' power to enjoin state court proceedings under the All Writs Act is substantially limited by the Anti-Injunction Act, which provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except" (1) "as expressly authorized by Act of Congress, or" (2) "where necessary in aid of its jurisdiction, or" (3) "to protect or effectuate its judgments." 28 U.S.C. § 2283; *see Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 589 F.3d 835, 844 (6th Cir. 2009). The three exceptions are "narrow" and "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed." *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2375 (2011) (quoting *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970)). "[P]rinciples of equity, comity and federalism oblige federal courts to act with great restraint, even where the power to grant an injunction has been found to lie within one of the exceptions to the Anti-Injunction Act." *Silcox v. United Trucking Serv., Inc.*, 687 F.2d 848, 850 (6th Cir. 1982). The parties agree that the first exception does not apply. (Doc. Nos. 173 at 3; 175 at 4.)

### A. Relitigation Exception

The third exception, injunctions to protect or effectuate a court's prior judgments, is commonly referred to as the relitigation exception. Plaintiffs contend the relitigation exception applies because Defendants' fraud claims could have been raised as counterclaims and "*Res Judicata* bars the relitigation not only of those issues that were actually litigated, but also those

7

that could have been raised in the earlier action. Accordingly, where an injunction aims to prevent relitigation of issues barred by the Doctrine of *Res Judicata*, it does not violate the Anti-Injunction Statute." (Doc. No. 173 at 4 (internal citation omitted).) Furthermore, Plaintiffs contend this Court's adjudication of Defendants' Rule 60(b) motion, in which Defendants assert many of the facts described in the state court complaint, constitutes a prior judgment for the purposes of this exception. (*See* Doc. No. 173 at 3–5.)

> However, the relitigation exception and res judicata are not co-extensive.
>
> While the relitigation exception is "founded" upon the concept of res judicata, the exception applies only as necessary to protect or effectuate a federal court judgment, and thus is not the equivalent of res judicata. Under the doctrine of res judicata, an issue which was or *should have been litigated* in a prior action cannot be raised in a subsequent action. In contrast, "an essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings *actually have been decided by the federal court*." Because the relitigation exception does not encompass the full parameters of res judicata, a federal court cannot enjoin the bringing in state court of claims that could have been raised in a prior federal action but were not in fact litigated there.

*Hatcher v. Avis Rent-A-Car Sys., Inc.*, 152 F.3d 540, 543 (6th Cir. 1998) (emphasis original, internal citation omitted) (quoting *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 148 (1988)). Indeed, the relitigation exception is construed strictly, with "every benefit of the doubt" going to the state court, because "a court does not usually get to dictate to other courts the preclusion consequences of its own judgment. Deciding whether and how prior litigation has preclusive effect is usually the bailiwick of the *second* court." *Smith*, 131 S. Ct. at 2376, 2375 (internal citation and quotation marks omitted).

Defendants first asserted their fraud claims before this Court in their Rule 60(b) motion, and the Settlement Agreement does not release Plaintiffs from any potential claims by Defendants (*see* Doc. No. 137), thus the Court's approval of the Settlement Agreement does not

constitute prior litigation of these claims. Nor does this Court's denial of Defendants' Rule 60(b) motion so constitute. To constitute prior litigation of Defendants' fraud claims, this Court must have decided the issue using the same legal standard that would be applied by the state court. *Smith*, 131 S. Ct. at 2377 ("a federal court considering whether the relitigation exception applies should examine whether state law parallels its federal counterpart"); *see, e.g.*, *Fharmacy Records v. Nassar*, 806 F. Supp. 2d 1030, 1032–35 (E.D. Mich. 2011). Defendants ask the state court to hear their claims on the merits. As explained below, this Court denies Defendants' motion under Rule 60(b) because Defendants did not file their motion within one year of this Court's final judgment. The applicable standards are not the same. Accordingly, the relitigation exception does not apply.

### B. Necessary In Aid of Jurisdiction

Plaintiffs also contend the second exception applies. An injunction is necessary in aid of the federal court's jurisdiction when it is "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atl. Coast Line R. Co.*, 398 U.S. at 295. "[T]he state action must not simply threaten to reach judgment first, it must interfere with the federal court's own path to judgment" to justify an injunction in aid of the court's jurisdiction. *In re Diet Drugs*, 282 F.3d 220, 234 (3d Cir. 2002).

> Several factors are relevant to determine whether sufficient interference is threatened to justify an injunction otherwise prohibited by the Anti-Injunction Act. First, we look to the nature of the federal action to determine what kinds of state court interference would sufficiently impair the federal proceeding. Second, we assess the state court's actions, in order to determine whether they present a sufficient threat to the federal action. And finally, we consider principles of federalism and comity, for a primary aim of the Anti-Injunction Act is "to prevent needless friction between the state and federal courts."

*Id.* (quoting *Okla. Packing Co. v. Okla. Gas & Elec. Co.*, 309 U.S. 4, 9 (1940)); *accord In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1252 (11th Cir. 2006) (exception "predicated on both complexity and potential for interference").

As to the nature of the federal action, the necessary in aid of jurisdiction exception initially applied exclusively to cases removed from state court and in rem actions. *Martingale LLC v. City of Louisville*, 361 F.3d 297, 302 (6th Cir. 2004). Today the exception also applies to complex class litigation that has settled or is on the verge of settlement because such litigation is "analogous to . . . an in rem action . . ., where it is intolerable to have conflicting orders from different courts." *Lorillard Tobacco Co.*, 589 F.3d at 848 (quoting *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 337 (2d Cir. 1985)); *see also Juris v. Inamed Corp.*, 685 F.3d 1294, 1339 (11th Cir. 2012) (complex litigation is the "virtual equivalent of a res"); *In re Diet Drugs*, 282 F.3d at 235 ("the complexity of the case" is "a substantial factor" in justifying an injunction).

As indicated by the other considerations relevant to determining what state court interference would sufficiently impair the federal proceeding to justify an injunction, complexity is the sine qua non of this modern application of the necessary in aid of jurisdiction exception. However, complexity in itself is insufficient to justify an injunction. *In re Diet Drugs*, 282 F.3d at 236. Additional considerations include whether the federal court retained exclusive jurisdiction over the action, "whether and at what point the state court plaintiffs were party to and opted out of the federal action; . . . whether the court perceives the state court plaintiffs to be abusing the process of the court; . . . the extent of judicial resources expended in managing the federal action; and . . . the stage of negotiation or settlement the federal action had reached at the

time an injunction of the state action is sought." *United States v. Purdue Frederick Co.*, 963 F. Supp. 2d 561, 573 (W.D. Va. 2013); *see, e.g.*, *In re Diet Drugs*, 282 F.3d at 236–37.

For example, in *In re Diet Drugs*, 282 F.3d at 236, an injunction was appropriate to prevent parallel state court litigation of class claims where the federal action was multidistrict litigation that "represented the consolidation of over two thousand cases that had been filed in or removed to federal court. [One of the classes at issue] finally certified comprised six million members. The District Court entered well over one thousand orders in the case." Furthermore, after years of negotiations, the district court entered an order conditionally certifying the nationwide class and preliminarily approving a settlement before the injunction issued. The Third Circuit reasoned that "[c]omplex cases in the later stages . . . embody an enormous amount of time and expenditure of resources . . . [and] are especially vulnerable to parallel state actions that may 'frustrate the district court's efforts to craft a settlement in the multi-district litigation before it,' thereby destroying the ability to achieve the benefits of consolidation." *Id.* (internal citation omitted).

Likewise, in *Battle v. Liberty Nat. Life Ins. Co.*, 877 F.2d 877, 880–82 (11th Cir. 1989), the district court presided over a case that consolidated three class actions through "seven years of litigation over complicated antitrust issues" and the settlement "established the rights of about 2.5 million [burial] policies," thus the case was the virtual equivalent of a res. Moreover, the district court retained and exercised jurisdiction to interpret the settlement agreement and apply it to particular policies. In affirming the district court's injunction against a state court lawsuit over one of the impacted policies, the Eleventh Circuit found that under these circumstances, "the district court must be able to maintain a flexible approach in resolving the various claims. These

11

state court suits, class actions which on their face challenge the propriety of the *Battle* judgment, can only undermine the district court's continuing jurisdiction over the case." *Id.* at 881.

However, in *United States v. Purdue Frederick Co.*, 963 F. Supp. 2d at 576, the district court oversaw a five-year grand jury investigation and forty-nine states ultimately took advantage of the settlement negotiated between the defendant and the government at the conclusion of the investigation. Nevertheless, because the matter only involved one case and two parties, the district court found "many of the most difficult issues, as well as the expenditure of judicial resources, that justified the issuance of injunctions" in complex litigation cases "were simply not present." *Id.*

After considering the nature of the federal action, Courts assess the threat posed by the state litigation to the federal action. Pursuant to the in aid of jurisdiction exception, federal courts may enjoin state court litigation that is "based on the allegations underlying the claims in the settled class action," *Lorillard Tobacco Co.*, 589 F.3d at 848; where parallel litigation would jeopardize a complex settlement or "make complex multidistrict litigation unmanageable," *Juris*, 685 F.3d at 1339; or where state court plaintiffs seek to directly contravene a federal court order, *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996). For instance, a district court overseeing multidistrict litigation in *Winkler*, 101 F.3d at 1202, issued an injunction prohibiting plaintiffs from seeking information in state court proceedings that the district court had specifically denied them in a previous order. In affirming the district court, the Seventh Circuit reasoned the injunction was necessary because the "parallel state court action would make a nullity of the district court's ruling, and render ineffective its efforts effectively to manage the complex litigation at hand." *Id.* Likewise, the court in *In re Am. Honda Motor Co., Inc., Dealerships Relations Litig.*, 315 F.3d 417, 438 (4th Cir. 2003), affirmed a district court's

injunction forbidding the enforcement of an arbitration award where the arbitrator was required to interpret the terms of the settlement agreement because the award directly frustrated the district court's order.

Applying the first and second factors to the case at hand, the Court finds Plaintiffs have not demonstrated that an injunction is necessary in aid of this Court's jurisdiction. Plaintiffs rely primarily on *Lorillard Tobacco Company* in support of their argument, but this matter is distinguishable. In *Lorillard*, the district court issued an injunction against state court litigation over the disbursement of supplemental attorney's fee payments under a settlement agreement that concluded multidistrict litigation. The Sixth Circuit upheld the injunction on multiple grounds: *Lorillard* was an interpleader action in which the district court retained exclusive control over a res—the disputed attorney's fees—and over which the district court had statutory injunctive authority; the settlement itself included a permanent injunction against further litigation over the matters included in it, and when a court issues an injunction "it automatically retains jurisdiction to enforce it"; the case involved a complex class settlement, the "virtual equivalent of a res"; and the enjoined parties asked the state court to declare their entitlement to the settlement fund, which required interpretation of the settlement agreement and risked interference with the district court's distribution of the fund. 589 F.3d at 847–51 (citations omitted).

Unlike *Lorillard* and the other above-cited cases, this matter lacks the complexity of large class action or multidistrict litigation. Although this matter involves three plaintiffs and three defendants, it does not approach the complexity of, nor has it required such a significant expenditure of judicial resources as, *Lorillard*, *In re Diet Drugs*, or *Purdue Frederick*. The parties filed their Joint Notice of Settlement before this Court could rule on the pending motions

13

for summary judgment (*see* Doc. No. 130), and the only significant expenditure of judicial resources in this matter has related to the resolution of the pending motions. After one unsuccessful settlement conference conducted by a Magistrate Judge (*see* Doc. No. 37), the parties arrived at the settlement agreement themselves. Compared to the cases above involving late stage multidistrict or class litigation, the judicial resources expended in managing this litigation and reaching a settlement were minimal. Furthermore, although this Court did retain jurisdiction over this matter at the parties' request pending the execution of the terms of the Settlement Agreement (*see* Doc. Nos. 130, 140), this retention of jurisdiction was not exclusive (*see* Doc. Nos. 137 at 4, 140), and this Court has not been called on to apply or interpret the agreement. This is not the type of litigation to which the necessary in aid of jurisdiction exception has been found to apply.

Second, the state court litigation does not impair this Court's proceedings. The relief sought by Defendants in the state litigation—a determination of whether they were defrauded by Plaintiffs in the course of their employment or during settlement negotiations—would not undermine this Court's previous Order approving the Settlement Agreement. Defendants did not release claims against Plaintiffs in the Settlement Agreement. The state court would not be required to interpret this Court's Order or the Settlement Agreement to adjudicate Defendants' claims. As to the claim that the settlement was induced by fraud, Defendants have yet to present those claims to this Court in a cognizable manner. Although further litigation may show the settlement was procured by fraud, the pendency of the state court claim does not prevent this Court from exercising its authority to enter the judgment requested by Plaintiffs against Defendants.

Indeed, were Defendants to bring their fraud claim before this Court, an injunction still would not be warranted under these circumstances. "As a general matter, . . . [c]oncurrent *in personam* jurisdiction does not satisfy the 'necessary in aid of jurisdiction' exception to the Anti–Injunction Act." *Juris*, 685 F.3d at 1339 (citation and internal quotation marks omitted). "[T]he general rule is still that '[w]here a suit is strictly *in personam* . . . there is no objection to a subsequent action in another jurisdiction, either before or after judgment, although the same issues are to be tried and determined[,] . . . because [the subsequent action] neither ousts the jurisdiction of the court in which the first suit was brought, nor does it delay or obstruct the exercise of that jurisdiction, nor lead to a conflict of authority where each court acts in accordance with the law.'" *Sandpiper Vill. Condo. Ass'n., Inc. v. Louisiana-Pac. Corp.*, 428 F.3d 831, 844 (9th Cir. 2005) (quoting *Kline v. Burke Const. Co.*, 260 U.S. 226, 232 (1922)).

Because "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy," *Atl. Coast Line R. Co.*, 398 U.S. at 297, and because Plaintiffs have not shown that any exception to the Anti-Injunction Act applies to this case, Plaintiffs' Motion for Injunctive Relief is **DENIED**.

### III.  RES JUDICATA AND COUNTERCLAIMS

Plaintiffs ask this Court to find Defendants' state court claims are barred by the principles of res judicata or collateral estoppel and to enjoin the further litigation of these claims. In the Second Supplement to their Motion for Entry of Final Judgment, Plaintiffs contend Defendants' state court claims "arise out of and relate to the facts of this action and, therefore, should have been filed with this Court as supplemental state claims." (Doc. No. 155 at 2.) Because they were not, "Defendants should not be able to maintain a separate action in Williamson County now and

15

they should be prohibited from doing so for their failure to file their compulsory and/or permissive counterclaims and/or because they waived their right to do so." (*Id.*) In response, Defendants contend the proper venue for their claims is the Williamson County Circuit Court. (*See* Doc. No. 159 at 3.) "The issue in the Circuit Court case is whether the claims brought in state court are compulsory counterclaims to the original FLSA" action; if so, Defendants "move this Court to open the litigation to accept jurisdiction and allow filing of the attached Complaint." (Doc. No. 159 at 4.) In response, Plaintiffs point out that they "have not requested this Court to accept supplemental jurisdiction" over the state court claims. (Doc. No. 162 ¶ 2.)

In short, both Plaintiffs and Defendants seek a ruling from this Court as to the preclusive effect of Defendants' failure to raise their counterclaims before this Court. If this Court were to determine the counterclaims were compulsory, Defendants seek to file a counterclaim before this Court. However, "a court does not usually 'get to dictate to other courts the preclusion consequences of its own judgment.'" *Smith*, 131 S. Ct. at 2375 (quoting 18 Charles Alan Wright, et al., Federal Practice and Procedure § 4405 (2d ed. 2002)). Furthermore, federal courts may enjoin litigation of compulsory counterclaims raised for the first time in a subsequent federal forum pursuant to the All Writs Act, but the Anti-Injunction Act limits federal courts' power to enjoin ongoing state litigation. *See Tropf v. Fid. Nat. Title Ins. Co.*, 289 F.3d 929, 941 (6th Cir. 2002).

> Thus, if a party asserts a claim in a state court that should be a compulsory counterclaim in an already pending federal action, the federal court cannot enjoin the prosecution of the state proceeding. In this situation the general objective underlying Rule 13(a) of avoiding multiple suits is outweighed by the express statutory policy prohibiting federal interference with the functioning of state judicial systems. The result is that in the absence of voluntary restraint by one of the courts, both the federal and the state actions will proceed toward judgment and the first to reach that point will serve as the basis for asserting a defense of claim or issue preclusion in the action that still is being adjudicated.

16

6 Charles Alan Wright, et al., Federal Practice and Procedure § 1418 (3d ed. 2010).

The preclusive effect of Defendants' failure to file counterclaims in this Court is for the state court to determine, and this Court cannot issue an injunction to prevent the Defendants from proceeding in state court. Plaintiffs' Motion is **DENIED**.

## IV. MOTION FOR ENTRY OF FINAL JUDGMENT AND RULE 60 MOTION FOR RELIEF

In his Report, Magistrate Judge Knowles recommended Plaintiffs' Motion for Entry of Final Judgment against Defendants (Doc. No. 143) be granted, over Defendants' objection that the forum selection clause in the Settlement Agreement requires Plaintiffs attempt to enforce the agreement in state court, because "[i]t defies logic to think that this Court cannot enforce its own Order explicitly retaining jurisdiction, particularly given the fact that the Order was entered at the parties' joint request." (Doc. No. 166 at 3.) Defendants filed no objection to the Magistrate Judge's Report.

The Court concurs with the Magistrate Judge's conclusion. "It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them." *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992) (citation omitted). Although this matter was closed and moved to the Court's administrative docket, this matter has not been dismissed. Indeed, at the parties' request, this Court retained jurisdiction over this matter pending the execution of the terms of the Settlement Agreement. (Doc. No. 140.) The Court has jurisdiction to enforce the terms of the settlement agreement. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381–82 (1994); *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 643 (6th Cir. 2001). Finding the Report to be well-founded, the Court **ADOPTS** the Report (Doc. No. 166).

"To enforce a settlement, a district court must conclude that agreement has been reached on all material terms . . . Summary enforcement is appropriate 'where no substantial dispute exists regarding the entry into and the terms of an agreement.'" *Henley v. Cuyahoga Cty. Bd. of Mental Retardation & Developmental Disabilities*, 141 F. App'x 437, 442–43 (6th Cir. 2005) (quoting *RE/MAX Int'l, Inc.*, 271 F.3d at 646). In this case, the parties do not dispute that they entered into a settlement agreement or the terms of the agreement. (*See* Doc. Nos. 149, 168.) Under such circumstances, "'only the existence of fraud or mutual mistake can justify reopening an otherwise valid settlement agreement.' More importantly, once a settlement is reached, it is the party challenging the settlement who bears the burden to show that the settlement contract was invalid based on fraud or mutual mistake." *Henley*, 141 F. App'x at 443 (quoting *Brown v. Cty. of Genesee*, 872 F.2d 169, 174 (6th Cir. 1989)).

Defendants argue "the sole reason for the failure to pay the settlement terms is based on the fraud and misrepresentation of the Plaintiffs" (Doc. No. 170 ¶ 5) and seek to invalidate the Settlement Agreement pursuant to Federal Rule of Civil Procedure 60(b)(3). The rule provides for relief from a final judgment or order because of "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." However, motions under Rule 60(b)(3) must be filed within a year of entry of the judgment or order. Fed. R. Civ. P. 60(c)(1); *see Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993) (finding remedies under 60(b)(6) and 60(b)(1)–(3) are mutually exclusive); *Mitchell v. Rees*, 651 F.3d 593, 597 (6th Cir. 2011).

Defendants seek relief from this Court's December 18, 2013, Order approving the parties' Settlement Agreement through a Motion under Rule 60(b)(3) filed September 14, 2015

18

(Doc. No. 168). Defendants did not file within Rule 60(b)(3)'s time limit. Accordingly, Defendant's Motion for Relief under Rule 60(b)(3) (Doc. No. 168) is **DENIED**.

Plaintiffs sought entry of final judgment in this matter in July, 2014. Defendants have had ample opportunity to present their fraud claims to this Court but, with the exception of their Rule 60(b)(3) motion, have failed to do so. Plaintiffs' Motion for Entry of Final Judgment (Doc. No. 143) is **GRANTED**. Should Defendants not bring cognizable fraud claim or seek other relief before this Court within fourteen days, the period of automatic stay of enforcement of judgment provided under Federal Rule of Civil Procedure 62(a), Defendants shall begin performance of the Settlement Agreement.

V. ATTORNEY'S FEES

Plaintiffs contend Defendants filed the state court litigation in retaliation for Plaintiffs' attempts to exercise their rights under the FLSA, that Defendants "intentionally multiplied litigation by filing their state law claims in Williamson County Circuit Court" instead of as counterclaims before this Court, and that they are entitled to attorney's fees incurred because of this conduct. (*E.g.*, Doc. No. 155 at 6–8.) Defendants did not respond to Plaintiffs' fees motion.

"The Court . . . has discretion, under 28 U.S.C. § 1927, to assess excess costs, expenses, and attorney fees directly against an attorney 'who so multiplies the proceedings in any case unreasonably and vexatiously.' This standard is satisfied 'when an attorney knows or reasonably should know that a claim pursued is frivolous.'" *Waeschle v. Dragovic*, 687 F.3d 292, 296 (6th Cir. 2012) (quoting *Tareco Props., Inc. v. Morriss*, 321 F.3d 545, 550 (6th Cir. 2003)) (internal citation omitted). This Court also has inherent authority to issue sanctions when a party has "acted in bad faith . . . or for oppressive reasons." *United States v. Aleo*, 681 F.3d 290, 305 (6th Cir. 2012). "The three-part test to determine whether such bad faith was present is whether the

19

district court found (1) that the claims advanced were meritless, (2) that counsel knew or should have known this, and (3) that the motive for filing suit was for an improper purpose such as harassment." *Id.* (quotation marks and citation omitted).

In support of their arguments, Plaintiffs present a letter from Brandy Murphy Lee stating that Plaintiffs are in breach of their severance agreement, converted Defendants' property, and "if [they] proceed with collection on the settlement agreement related to the FLSA claims, . . . they will be met with at least this counterclaim." (Doc. No. 152-1 at 2.) Although Plaintiffs so allege, they have not shown that Defendants' state court claims are meritless or frivolous.

Plaintiffs' motions for attorney's fees are **DENIED** with leave to refile should the circumstances warrant.

## VI. CONCLUSION

For the reasons stated above, Plaintiffs' Motion to Supplement (Doc. No. 153) is **GRANTED**. The Magistrate Judge's Report (Doc. No. 166) is **ADOPTED** and Plaintiffs' Motion for Entry of Final Judgment (Doc. No. 143) is **GRANTED**. Plaintiffs' Second Supplement to their Motion for Entry of Final Judgment (Doc. No. 155) is **GRANTED in part** and **DENIED in part**. Defendants' Motion for Relief from Order Pursuant to FRCP Rule 60(b) (Doc. No. 168) is **DENIED**. Defendants' Motion to Strike (Doc. No. 170) is **TERMINATED as MOOT**.

It is so ORDERED.

Entered this the 2nd day of March, 2016.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT